J-S12022-19 & J-S12023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.H., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.H., FATHER | : : : : : : | |
| | : | No. 308 MDA 2018 |

Appeal from the Decree Entered January 8, 2018
In the Court of Common Pleas of Luzerne County Orphans' Court
No(s):  A-8472

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J.H., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.T.H., NATURAL FATHER | : : : : : : | |
| | : | No. 1723 MDA 2018 |

Appeal from the Decree Entered January 8, 2018
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-8473

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 15, 2019**

M.H. ("Father") appeals the January 8, 2018 Decrees involuntarily

terminating his parental rights to his minor son, J.J.H. (born January 2010),

and minor daughter, J.M.H. (born February 2014) ("Children").[1]  Because the

record supports the decision of the trial court, we affirm the Decrees.[2]

We glean the following factual and procedural history from the certified

record.    In February of 2015, Luzerne County Children and Youth Services

("CYS") obtained emergency shelter care orders for Children placing them in

CYS's care due to domestic violence, substance abuse, and mental health

issues.    Prior to Children's removal, Father had repeatedly physically

disciplined J.J.H., at one point breaking J.J.H.'s femur.  Father served a period

of incarceration for that abuse.

While incarcerated, Father participated in parenting classes, mental

health treatment, and drug and alcohol evaluation and treatment.   Upon

Father's discharge from prison, the court ordered him to undergo a

psychological evaluation so the court could determine whether visitation was

appropriate.   Father failed to appear at his initial evaluation appointment

scheduled for May 2016.   He did appear for his rescheduled psychological

evaluation in September 2016, but failed to appear for subsequent treatment

appointments with mental health professionals. Father took no action to

_____

[1] The court also involuntarily terminated the parental rights of Children's Mother, K.L.R ("Mother").  Mother appealed those Decrees at Docket Nos. 256 MDA 2018 and 257 MDA 2018, which we address in a separate Memorandum.

[2] The Decrees themselves misstate the year as 2017, which we conclude was a ministerial error.  As noted *infra*, we affirm the involuntary termination of Father's parental rights but remand for the court to correct the year on the Decrees.

- 2 -

pursue visitation with Children following the completion of the psychological evaluation in September 2016.

Although Father participated in four parent-training sessions in Luzerne County in November 2015, he moved to Dauphin County and told CYS he would obtain parenting services there. However, Father took no action to continue parenting services in that County.

On August 30, 2016, CYS filed Petitions to involuntarily terminate Father's parental rights to Children. The court appointed Attorney Matthew Carmody to represent Father.[3] The court conducted six hearings over seven months, beginning on March 30, 2017.[4] CYS presented testimony from, *inter alia*, Lisa Ross, a parent educator with Concern Incorporated; Sherri Harman,

_____

[3] The court appointed both a Guardian *Ad Litem* and a Child Advocate to represent Children at the termination proceedings. Although the trial court appointed a Child Advocate, this was unnecessary because there was not a conflict between the children's best and legal interests: J.M.H., who was three years old at the time of the hearings, was too young to express a preference; J.H.H. was seven years old and expressed his preference to numerous individuals, including his therapist, his caseworker, and his guardian *ad litem*, to remain in his pre-adoptive home and not to see Father, whom he feared. Accordingly, the failure of the Child Advocate to appear at the termination hearings is immaterial because the children's legal interests were the same as their best interests, and the Guardian *Ad Litem* actively participated in each hearing.

[4] The hearings on October 16, 2017, and October 19, 2017, also included proceedings in the related dependency cases pertaining to changing Children's permanency goals to adoption. Father did not appeal the dependency dispositions.

- 3 -

CYS caseworker; Sandra Turinski, J.J.H's trauma therapist; and Alicia Singer, a senior clinician at Community Counseling Service. Each testified about J.J.H.'s fear of Father, Father's failure to complete mental health treatment and parent education classes, and Children's thriving in their foster home where they have lived since February 2015 and which is a pre-adoptive resource.

On January 8, 2018, the court issued Decrees terminating Father's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). Thereafter, Father filed Notices of Appeal and concise statements of errors complained of on appeal.[5]

**ISSUES ON APPEAL**

---

[5] On February 9, 2018, new counsel for Father, Attorney Keith Hunter, filed a Notice of Appeal and concise statement of errors complained of on appeal with respect to the Decree involuntarily terminating Father's parental rights only as to J.M.H. Attorney Hunter then filed a Motion to file notice of appeal *nunc pro tunc*, asserting that the appeal with respect to J.M.H. was untimely, and requesting permission to appeal *nunc pro tunc*. The trial court never acted on this Motion. Subsequently, the court appointed substitute counsel for Father, Attorney Thomas Sharkey, who filed a Motion to proceed *nunc pro tunc* regarding the Decree involuntarily terminating Father's parental rights to J.J.H. By order dated October 15, 2018, the trial court granted the Motion as to J.J.H. only. On October 18, 2018, Father filed a Notice of Appeal and concise statement of errors complained of on appeal with respect to the Decree terminating his parental rights to J.J.H.

We observe that the trial court's docket entries do not comply with the rules regarding entry of orders. **See** Pa.R.A.P. 301(a)(1); Pa.R.A.P. 108(b); Pa.R.C.P. 236(b). Due to this breakdown in the court's operations, the appeal period was technically not triggered. Accordingly, in the interests of judicial economy, we will deem that which should have been done as done, and address both appeals as timely.

Father raises the following issues on appeal:

1. Did the trial court abuse its discretion, commit an error of law and/or was there insufficient evidentiary support in terminating the parental rights of natural father with respect to [Children] pursuant to 23 Pa.C.S.A. § 2511 (a)(2), (5)[, and] (8)?

2. Did the trial court abuse its discretion, commit an error of law and/or was there insufficient evidentiary support in determining that the best interests of [Children] would be served by terminating Father's parental rights?

Father's Brief at 3 (unnecessary capitalization and suggested answers omitted).

**LEGAL ANALYSIS**

In reviewing cases involuntarily terminating parental rights, appellate courts must accept the findings of fact and credibility determinations of the trial court if the record supports them. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id***. (citations omitted). Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result. ***In re Adoption of Atencio****,* 650 A.2d 1064, 1066 (Pa. 1994).

> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's

inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted).

We defer to the trial court that often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." *In re Adoption of R.J.S.,* 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing Petitions to Involuntarily Terminate Parental Rights, the Adoption Act[6] requires courts to conduct a bifurcated analysis. Pursuant to Section 2511, the court first focuses on the conduct of the parent. If the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, as provided in Section 2511(b). 23 Pa.C.S. § 2511(a) and (b); *In re L.M.*, 923

---

[6] 23 Pa.C.S. §§ 2101-2938.

- 6 -

A.2d 505, 511 (Pa. Super. 2007). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *Id.* at 511 (citations omitted).

While the trial court here found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(2), (5), and (8), as well as (b), we need only agree with its decision as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus our analysis on Section 2511(a)(2) and (b), which provides as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

**Termination Pursuant to Section 2511(a)(2)**

We first conclude that the trial court properly exercised its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

Our Supreme Court set forth our inquiry under Section 2511(a)(2) as follows:

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .
>
> This Court has addressed incapacity sufficient for termination under § 2511(a)(2):
>
> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements:

(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

Father contends that there was insufficient evidence to support termination of his parental rights pursuant to Section 2511(a)(2) because the testimony regarding his mental health was limited, and he actively participated in a parenting program until it was cancelled due to his move to Dauphin County. Father's Brief, at 7-8. Father asserts he was willing to continue the parenting program, and a "review of the record reveals [CYS] did not present any substantive evidence regarding [Father]'s parenting abilities

beyond the testimony of Ms. Ross who was only able to work with [Father] for four (4) sessions."[7]  *Id.* at 8.  Father's argument misses the point.

The trial court addressed the sufficiency of the evidence supporting termination pursuant to Section 2511(a)(2) as follows:

> It is clear from the testimony of witnesses and evidence presented that Father has been unable to resolve his mental health issues and parenting issues.  Although Father completed a mental health evaluation and although Father was initially compliant with the parenting services, this [c]ourt finds that being partially compliant is not sufficient in this case.  This is a case where Father broke his child's leg and further imposed harsh discipline upon the child, J.J.H., causing the child to suffer significant trauma as a result of his injury.  Although Father was incarcerated as a result of his actions, Father, nevertheless, is required to complete the court ordered services in order to insure that Father remedied the conditions that gave rise to the placement of the children.  The [c]ourt finds that Father has not been able to remedy the conditions that gave rise to the placement of the children.

\*\*\*

_____

[7] Father also argues the court erroneously relied on transcripts from the goal change hearings.  Father's Brief at 7-8.  Although Father raises this argument twice, the essence of his argument is that he "contends that the court erroneously relied on that testimony as it was part of the Dependency Docket and was not incorporated into the Termination of Parental Rights Docket."  *Id.* at 7.  This argument is incorrect because the hearings at issue occurred after CYS filed the termination petitions. Moreover, Father includes no legal authority for his assertion that the trial court could not review transcripts from the goal change hearings on October 16, 2017 and October 19, 2017 that are included in the record.  Because Father fails to develop this argument, it is waived.  *See In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010) (reiterating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." (citation omitted)).

> Given the overwhelming evidence and testimony, it is clear that Father has received and/or has been offered extensive services over the years and he failed to complete the services. . . . At this juncture, the children's right to have proper parenting in fulfillment of their potential in a permanent, healthy, safe environment outweighs Father's interest.

Trial Court Opinion, 11/19/18, at 13-14.

Our review of the record supports the trial court's findings. Father failed to make any material progress towards reunification following Children's removal in February of 2015. CYS offered Father parenting services, mental health services, and drug and alcohol evaluation and treatment. Although Father completed drug and alcohol treatment, Father did not complete his mental health or parenting services. While Father briefly participated in parenting classes, he failed to complete them, and failed to pursue any mental health treatment. In the intervening years, Father has not had any visitation with Children, and there is no evidence he made any effort towards having visitation, or even contact, with Children. Children have now been in care for four years.

As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006). Having reviewed the record, we conclude that it supports the findings of the trial court that Father has not provided Children with the essential

parental care, control and subsistence necessary for their mental and physical well-being, and that Father is unable to remedy the causes of his parental incapacity, neglect or refusal any time in the foreseeable future. Thus, Father is not entitled to relief.

**Termination pursuant to Section 2511(b)**

With respect to Section 2511(b), we consider whether termination of parental rights will best serve Children's developmental, physical, and emotional needs and welfare. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

It is sufficient for the trial court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. *In re Z.P.*, *supra* at 1121. The trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa.

Super. 2011). Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *See In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

Father argues the trial court erred in its analysis of Section 2511(b) because J.J.H.'s trauma therapist testified that J.J.H. was still in a course of treatment and that, in some cases, "there is eventual growth in the relationship between father and child." Father's Brief at 10. Further, Father asserts that the testimony of the CYS caseworker did not address the status and nature of the parent/child bond between Father and Children. *Id.* at 10-11. We disagree.

The trial court observed that "[CYS] presented credible testimony regarding the needs, welfare and best interest of [Children] in relation to their Father[,]" and engaged in a lengthy analysis of the testimony presented by CYS. Trial Court Opinion, 11/19/18, at 15-16. The court found credible the testimony that J.J.H. is extremely fearful of Father, has not seen him since February 2015, and it would not be in J.J.H.'s best interest to have any contact with Father. *Id.* at 11-12. The court also noted that J.M.H. has been with

Foster Parents since she was one year old and has not seen Father since February 2015. In light of this evidence of a complete lack of contact with Father since February 2015, it was reasonable for the court to infer that there is no bond between Father and Children, the severance of which would cause detriment to Children's well-being. Although J.J.H.'s trauma therapist acknowledged there could be future growth in the relationship between J.J.H. and Father, at the time of the termination hearings, the evidence found credible by the trial court was that the relationship continued to be unhealthy and detrimental to J.J.H.

Finally, the court relied on Ms. Hartman's testimony that terminating Father's parental rights would be positive for Children, because it would allow them to achieve permanency through adoption into their loving and caring foster family. *Id.* at 16.

Our review of the record supports the trial court's determination and we discern no abuse of discretion or error law. Children have no relationship with Father due to Father's failure to complete the mental health and parenting services offered to him starting in February 2015. We, thus, affirm the court's determination that involuntary termination of Father's parental rights is in the best interests of Children. *See T.S.M.*, 71 A.3d at 269 (stressing the need to expedite the placement of dependent children "in permanent, safe, stable, and loving homes.").

Decrees affirmed.  Cases remanded for the ministerial correction of the year on the Decrees from 2017 to 2018.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/15/2019